## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Nov 10 2015, 8:47 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

T. Andrew Perkins
Peterson Waggoner & Perkins, LLP
Rochester, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Richard C. Webster
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Nathan Scott Davis,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

November 10, 2015

Court of Appeals Case No.
25A03-1507-CR-909

Appeal from the Fulton Superior Court

The Honorable Wayne E. Steel, Judge

Trial Court Cause No.
25D01-1505-CM-214

**Robb, Judge.**

# Case Summary and Issue

[1] Nathan Davis entered a plea of guilty to battery resulting in bodily injury, a Class A misdemeanor. The trial court sentenced Davis to one year executed in the Fulton County Jail. Davis appeals his sentence, raising one issue for our review, which we restate as whether Davis' sentence is inappropriate in light of the nature of his offense and his character. Concluding Davis' sentence is not inappropriate, we affirm.

# Facts and Procedural History

[2] On May 17, 2015, Officer Gerard Ostrom of the Rochester Police Department was dispatched to a home in Rochester, Indiana. Upon entering the home, Officer Ostrom observed Amber Gaines lying on the floor with Davis kneeling next to her. Gaines had suffered bruising and swelling to her left eye and experienced pain on the right side of her body. Further, Gaines was crying and telling Davis to get away from her.

[3] As Officer Ostrom began separating the two, Gaines stated Davis was drunk. Upon being asked what had occurred, Davis stated he became upset after Gaines had swallowed a bunch of pills to harm herself. In addition, Davis stated after Gaines took the pills, Davis hit Gaines, but did not know how many times. Upon being asked about Gaines' facial injuries, Davis stated he hit her in the stomach, but did not remember hitting her in the face. Officer Ostrom arrested Davis. After arresting Davis, Officer Ostrom spoke to Gaines. Gaines

admitted to swallowing the pills because Davis had stated he was going to leave her. In addition, Gaines stated Davis hit her in the face and on the right side of her body.

[4] The following day, the State charged Davis with battery resulting in bodily injury, a Class A misdemeanor. At his initial hearing, Davis waived counsel and entered a plea of guilty. At the hearing, the State asked Davis whether he hit Gaines in the face. Davis replied, "I was very drunk. I blacked out during this. I don't remember the altercation at all. But I do understand that, you know, if that's what the report says, that's what the report says." Transcript at 6-7.

[5] Prior to sentencing, Gaines provided a written statement to the trial court describing the incident. Gaines stated Davis was drunk and that he wanted to end their relationship. The argument escalated and Davis began screaming at Gaines, stating she was "a bad mother and that she needed to stop pretending to be a good one." Appellant's Appendix at 18. Gaines stated something "inside [her] head snapped" and she decided to take "what was left of [her] prescription of [B]entyl." *Id.* Davis then "complete[ly] flipped out" and began grabbing her hair and pulling on her. *Id.* Davis demanded she force herself to puke. When Gaines ignored Davis, Davis began punching Gaines in the head and the back of the neck. Further, Davis began dragging Gaines toward the bathroom, but after Davis punched Gaines on the right side of her body, Gaines just laid on the floor. Davis then punched Gaines in the face near her left eye. Shortly thereafter, Officer Ostrom arrived at the home.

[6] At sentencing, the trial court entered judgment of conviction and sentenced Davis to 365 days executed in the Fulton County Jail. This appeal ensued.

# Discussion and Decision

## I. Standard of Review

[7] Davis contends his sentence is inappropriate in light of the nature of the offense and his character. A reviewing court possesses the authority to revise a defendant's sentence "if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Ind. Appellate Rule 7(B). The burden is on the defendant to persuade the reviewing court the sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006). "[S]entencing is principally a discretionary function in which the trial court's judgment should receive considerable deference." *Cardwell v. State*, 895 N.E.2d 1219, 1222 (Ind. 2008). It is not for the reviewing court "to achieve a perceived 'correct' result in each case," but "[t]he principal role of appellate review should be to attempt to leaven the outliers." *Id.* at 1225. Whether we regard a sentence as inappropriate turns on "the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Id.* at 1224.

# II. Davis' Sentence

[8]    As to the nature of the offense, the advisory sentence is the starting point the legislature selected as an appropriate sentence for the crime committed. *Anglemyer v. State*, 868 N.E.2d 482, 494 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218. Davis was convicted of battery resulting in bodily injury, a Class A misdemeanor. "A person who commits a Class A misdemeanor shall be imprisoned for a fixed term of not more than one (1) year . . . ." Ind. Code § 35-50-3-2. There is no advisory sentence for a Class A misdemeanor. *See id*. The trial court sentenced Davis to 365 days executed in the Fulton County Jail.

[9]    Davis contends the circumstances of the encounter suggest that it was an isolated incident, and influenced by panic and alcohol, not anger or viciousness. Specifically, Davis argues the fact Gaines had taken pills to harm herself justifies his reaction. Yet, the encounter began when Davis stated he wanted to end their relationship. When Gaines requested the pair discuss the matter the following morning, Davis got mad, began yelling and insulting Gaines, stating she was a bad mother and needed to stop pretending to be a good one. That, Gaines claimed, is when she decided to take the pills. Rather than calling 911 to seek assistance with his girlfriend's fragile state, Davis turned to violence.

[10]   As to his character, Davis contends his criminal history is nonviolent, he is only twenty-four years old, and he showed immediate remorse for his crime. Although Davis did show signs of remorse, he initially denied anything occurring between him and Gaines. Although Davis ultimately pled guilty, this

is tempered by the fact he shied away from taking full responsibility for his actions at the sentencing hearing. When asked if he hit Gaines, Davis stated, "I was very drunk. I blacked out during this. I don't remember the altercation at all. But I do understand that, you know, if that's what the report says, that's what the report says." Tr. at 7. Finally, as to his criminal history, we note Davis was previously convicted of four Class D felonies for theft and the trial court sentenced him to one and one half years in the Indiana Department of Corrections with the entire sentence suspended except for time served. He was placed on probation for a period of one year and three months. That probation was revoked after Davis was charged with other crimes in Marshall County, Indiana. Therefore, it is evident Davis previously received the benefit of a less-than-advisory, non-executed sentence and did not take advantage of it. Given the nature of the offense and Davis' character, we are not persuaded Davis' sentence of one year in the Fulton County Jail is inappropriate.

# Conclusion

[11] Davis' sentence is not inappropriate in light of the nature of his offense or his character. Accordingly, we affirm the sentence.

[12] Affirmed.

Vaidik, C.J., and Pyle, J., concur.